IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANALYNN FARKAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 11-1502 |
| v. | ) | |
| | ) | Chief Judge Gary L. Lancaster |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | Electronic Filing |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

September 24, 2012

### I. INTRODUCTION

Dianalynn Farkas ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 – 433, 1381 – 1383f ("Act"). This matter comes before the court on cross motions for summary judgment. (ECF Nos. 10, 12). The record has been developed at the administrative level. For the following reasons, Plaintiff's Motion for Summary Judgment will be DENIED, and Defendant's Motion for Summary Judgment will be GRANTED.

## II. PROCEDURAL HISTORY

Plaintiff filed for DIB and SSI with the Social Security Administration on February 1, 2010, claiming an inability to work due to disability as of November 15, 2008. (R. at 114 – 23)[1]. Plaintiff was initially denied benefits on June 11, 2010. (R. at 64 – 72). A hearing was scheduled for May 4, 2011, and Plaintiff appeared to testify, represented by counsel. (R. at 26 – 60). A vocational expert also testified. (R. at 26 – 60). The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on May 24, 2011. (R. at 12 – 25). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on September 21, 2011, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1 – 4).

Plaintiff filed her Complaint in this court on November 28, 2011. (ECF No. 3). Defendant filed his Answer on April 16, 2012. (ECF No. 7). Cross motions for summary judgment followed. (ECF Nos. 10, 12).

## III. STATEMENT OF THE CASE[2]

Plaintiff was born March 7, 1958 and was fifty three years of age at the time of her administrative hearing. (R. at 30). Plaintiff was married and had three children, one of whom attended college. (R. at 30). Plaintiff was having difficulty affording her mortgage, and was in the process of attempting to re-negotiate the payment terms. (R. at 30). In the meantime, Plaintiff and her family had moved into a rental home, in which Plaintiff had experienced numerous maintenance issues. (R. at 30).

---

[1] Citations to ECF. Nos. 8 – 8-9, the Record, *hereinafter*, "R. at __."

[2] In her Motion, Plaintiff's sole contention was that the ALJ erred by failing to include her anxiety condition as a "severe" impairment at Step 2. (ECF No. 11 at 5 – 8). The court, therefore, will focus its discussion only on that portion of the record relevant to the above issue.

Plaintiff graduated high school and earned a Bachelor of Arts in Humanities at the University of Pittsburgh. (R. at 32, 275). At the time of her hearing she was unemployed. (R. at 33). Plaintiff last worked as therapeutic staff support in a childhood disability care setting between December 2009 and January 2010. (R. at 32, 144). Plaintiff typically worked twenty-five hours per week. (R. at 32, 144). She was eventually asked to resign due to tardiness and absenteeism resulting from difficulties controlling her asthma. (R. at 33). Prior to that, Plaintiff worked at Keystone Service Systems between April 2009 and July 2009. (R. at 145). She worked forty hours per week. (R. at 145). Generally, Plaintiff described her work history as "erratic," because she would start positions and then either quit or be asked to resign due to her asthma-related limitations. (R. at 34 – 35, 49). At the time of her hearing, Plaintiff had no income of her own, and subsisted on the income earned by her husband at three different jobs. (R. at 31).

Plaintiff claimed that her primary barrier to employment were her physical limitations arising from her asthma. (R. at 34 – 35, 49). However, Plaintiff was an otherwise functional individual. She maintained a driver's license and drove daily to take her children to and from activities. (R. at 31, 45). Plaintiff was capable of caring for herself independently, performed numerous chores around the home, cooked meals, and attended church. (R. at 45, 47). She spent much of her time researching how to avoid foreclosure and re-negotiate the terms of her mortgage. (R. at 45). She volunteered for two hours a week at a pregnancy crisis center, and also volunteered as a girl scout leader. (R. at 46).

Plaintiff took numerous medications, including Xanax for anxiety. (R. at 37). She described experiencing anxiety as a result of worrying about her finances, employment, home, and personal health. (R. at 38, 40, 47, 50 – 51). Stress and asthma attacks could trigger anxiety

3

attacks. (R. at 31, 51). It allegedly affected her concentration and memory. (R. at 37, 51). Plaintiff also complained that the Xanax made her fatigued. (R. at 49). Plaintiff's need for anxiety medication fluctuated, however; some weeks she needed no medication, and other weeks Plaintiff took medication daily. (R. at 49). She had only begun seeking treatment for her anxiety several months prior to her hearing. (R. at 37 – 38).

In a Psychiatric Review Technique completed by state agency evaluator Michelle R. Santilli on May 26, 2010, following a review of Plaintiff's medical files, it was concluded that Plaintiff did not suffer from any severe medically determinable mental impairments. (R. at 238 – 50). Dr. Santilli felt that, in spite of Plaintiff's claimed anxiety attacks as a result of stress, her anxiety had not affected her ability to work. (R. at 238 – 50).

Plaintiff participated in a psychological evaluation with Dominic J. DeLuigi, Ph.D. over the course of three visits between June 2010 and November 2010. (R. at 271 – 84). At the time, Plaintiff was being treated by her primary care physician for panic attacks, and Plaintiff complained of depression and anxiety, but had no diagnosed conditions. (R. at 271). Plaintiff reported a history of intermittent psychological treatment beginning around age sixteen for post-traumatic stress disorder and panic attacks arising from an abusive childhood. (R. at 276). Over the course of the evaluations, Dr. DeLuigi observed Plaintiff to speak logically and coherently, with a normal voice. (R. at 276). She was cooperative and interacted with Dr. DeLuigi appropriately. (R. at 276). Plaintiff was conscious and fully oriented. (R. at 276).

Dr. DeLuigi performed a number of objective tests to evaluate Plaintiff's intelligence and functional capabilities. (R. at 272 – 75). He concluded that Plaintiff could comprehend simple commands, and that her remote and intermediate memory was intact. (R. at 276). Plaintiff did have issues with her short term/working memory. (R. at 276 – 77). Her attention

4

and concentration were also impaired. (R. at 276 – 77). Plaintiff's intellectual level and fund of information were in the above average/superior range. (R. at 276 – 77). Her mathematics skills were below average, however. (R. at 277). Abstract thinking was intact, and Plaintiff exhibited no perceptual disturbances. (R. at 276).

Plaintiff informed Dr. DeLuigi that she was usually in a good mood, but lately had been rather depressed. (R. at 276). Dr. DeLuigi noted that Plaintiff had fleeting suicidal ideation in the past. (R. at 276). Her affect reactions were appropriate during the evaluations, her judgment was average, and her impulse control was average. (R. at 276). Dr. DeLuigi ultimately diagnosed Plaintiff with major depressive disorder, post-traumatic stress disorder, panic disorder, and mathematics disorder. (R. at 279). Dr. DeLuigi felt that Plaintiff would be most successful in jobs of an artistic or humanitarian nature. (R. at 279). He also provided an extensive list of job accommodations that should be provided to Plaintiff to minimize the effects of concentration issues, depression and anxiety, stress, sleep disorder, and memory problems. (R. at 280 – 84). No explicit statement of Plaintiff's functional limitations was provided, however. Plaintiff was advised to engage in psychotherapy and medication management. (R. at 279).

Maura Krushinski, Ed.D. was Plaintiff's therapist. (R. at 285). In the past, she had treated Plaintiff for brief intervals in 1995 – 1996 and 2000 – 2001. (R. at 285). Plaintiff re-initiated therapy with Dr. Krushinski in November 2010. (R. at 285). Dr. Krushinski considered Plaintiff to be a "pleasant, focused and aware woman with marked psychological functional impairment." (R. at 285). In addition to Plaintiff's asthma, Dr. Krushinski opined that Plaintiff's history of panic disorder and post-traumatic stress disorder seriously compromised her ability to work. (R. at 285). Plaintiff's history of childhood abuse, fear of asthma attacks, and financial/employment struggles had made her anxiety and post-traumatic stress disorder

5

unbearable. (R. at 285). Despite Plaintiff's otherwise normal mental status, her skill level, and her efforts to compensate for her psychological impairments, Dr. Krushinski did not believe Plaintiff to be capable of working. (R. at 285).

Dr. Krushinski completed a mental residual functional capacity questionnaire on April 12, 2011. (R. at 291 – 94). In it, she diagnosed Plaintiff with panic disorder and post-traumatic stress disorder. (R. at 291 – 94). She noted Plaintiff to be somewhat limited to seriously limited in her ability to maintain regular attendance and punctuality within customary tolerances. (R. at 291 – 94). Plaintiff was believed to be likely to miss more than four days of work per month. (R. at 291 – 94). Plaintiff was also seriously limited in her ability to use public transit. (R. at 291 – 94). Plaintiff was otherwise unlimited or somewhat limited in her ability to function. (R. at 291 – 94).

## IV. STANDARD OF REVIEW

To be eligible for social security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's

6

impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §404.1520(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[3] and 1383(c)(3)[4]. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. §706. The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).

---

[3] Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

[4] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196 – 97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d. Cir. 1986).

## V. DISCUSSION

The ALJ concluded that Plaintiff had a medically determinable severe impairment in the way of asthma. (R. at 14). It was determined that Plaintiff was not disabled because she had the functional capacity to perform light work, except that she could not be exposed to extremes of dust, fumes, humidity, or chemicals. (R. at 16). As per the testimony of the vocational expert, a significant number of jobs existed in the national economy which could be performed by a person with Plaintiff's limitations. (R. at 19 – 21).

8

Plaintiff objects to the determination by the ALJ, arguing that the ALJ erred in failing to find that Plaintiff had severe medically determinable mental impairments at Step 2 of his analysis. (ECF No. 11 at 5 – 8). Specifically, Plaintiff claims that the medical record supports a finding that Plaintiff's anxiety, post-traumatic stress disorder, and depression created more than minimal effects on her ability to work, and justified a finding of mental impairment at Step 2. Due to the ALJ's failure to make such a finding, the court is asked to remand the case so that the ALJ can analyze the effects of the limitations stemming from the aforementioned impairments on Plaintiff's ability to work. Defendant counters that the effects of the claimed impairments are not more than minimal, and that even if said impairments had been included at Step 2, would not have resulted in limitations precluding Plaintiff from work – constituting harmless error. (ECF No. 13 at 8 – 12).

At Step 2, "severe" impairment is defined by regulation as "any impairment . . . which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ's analysis at Step 2 to determine whether or not an alleged impairment is "severe," is no more than a "*de minimis* screening device to dispose of groundless claims." *Magwood v. Comm'r of Soc. Sec.*, 417 Fed. App'x 130, 132 (3d Cir. 2008) (quoting *Newell v. Comm'r of Soc. Sec.*, 347 F. 3d 541, 546 (3d Cir. 2003)). Impairment is not "severe" where the record demonstrates only "slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.'" *Id.*

Given, then, that the purpose of Step 2 is merely to serve a minimal gate-keeping function, Plaintiff's burden is not an exacting one. *McCrea v. Comm'r of Soc. Sec.*, 370 F. 3d 357, 360 (3d Cir. 2004) (citing S.S.R. 85-28, 1985 WL 56856 at *3). Reasonable doubts regarding the evidence should be construed in the light most favorable to the claimant. *Newell*,

347 F. 3d at 547. Further, the use of Step 2 as a vehicle for the denial of benefits should, "raise a judicial eyebrow," and deserves "close scrutiny." *McCrea*, 370 F. 3d at 360 – 61. The court must determine whether the ALJ provided substantial evidence as justification for his decision. *Kirk v. Comm'r of Soc. Sec.*, 177 Fed. App'x 205, 207 (3d Cir. 2006); *McCartney v. Comm'r of Soc. Sec.*, 2009 WL 1323578 at *13 – 16 (W.D. Pa. May 8, 2009).

Plaintiff does make a persuasive argument that the notes of Drs. DeLuigi and Krushinski suggested a degree of limitation stemming from Plaintiff's mental conditions which could justify a finding of severe impairment at Step 2. In spite of this evidence, the ALJ rejected the more severe findings by the doctors. (R. at 15). Of greatest importance in this decision was Plaintiff's failure to seek consistent treatment for mental impairments during the relevant period until only a few months prior to her hearing, her use of medication for her anxiety on an as-needed basis, only, her relatively unremarkable mental status examinations, findings of fairly moderate symptomology in psychological evaluations, and Dr. Santilli's findings of no limitation, and no impairment due to Plaintiff's mental state. (R. at 15). This is sufficient to meet the ALJ's burden of providing substantial evidence. Further, as noted by Defendant in his Motion, Plaintiff held jobs during the relevant time period under consideration during which she worked twenty-five to forty hours per week. Plaintiff testified that she left these positions due to her asthma, only.

## VI. CONCLUSION

Based upon the foregoing, the court finds that substantial evidence supported the determination by the ALJ. Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [document #10] is DENIED, Defendant's Motion for Summary Judgment [document #12] is GRANTED, and the decision of the ALJ is AFFIRMED.

Gary L. Lancaster
Chief United States District Judge

cc/ecf: Kelie C. Schneider, Esq.
Berger and Green, P.C.
800 Waterfront Drive
Pittsburgh, PA 15222
(412) 661-1400

Albert Schollaert, Esq.
United States Attorney's Office
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
(412) 644-3500